Good morning. Good morning. Excuse me. And may it please the court. My name is Peter Taylor. I represent the appellants, the Donohoe family, Paul and Kathy. Can you speak up a little bit? Yes, sir. Sorry, Your Honor. I would like to reserve at this time three minutes for rebuttal. As I said, I represent the Donohoe family. There's two generations, Paul and Kathy Donohoe, and then Paul's sister, Torian Donohoe, and then Paul and Kathy's children, Kyle and Anna, and their spouses, and Casey and David Arntzen. This case involves a Forest Service's attempt to construct a trail that the Forest Service employees claims retraces a historic trail they call the Bryant Trail. The case is largely about Forest Service employees making efforts to check the boxes on their NEPA and their environmental obligations. Right? That's correct, Your Honor. The bridge was installed. That project was under a decision memo in 2015. My question is, why isn't the NEPA claim moot? And even if it's not moot, what more can they contend? What damages do they have regarding that at this point? What remedy could the court order regarding the bridge? So, with regard to the bridge, we would say that they could remand that decision, vacate and remand. That decision actually had no NEPA analysis, so the Forest Service undertook what they are calling NEPA to get funding under a program called the Recreational Trails Program, which is where your federal highway dollars, you pay tax, and that goes to the state of Montana. They didn't do any NEPA analysis on that. Well, what harms do they contend still exist, though? Well, much the same harm as they've alleged on the second half for the connector trail. Their property lays right down river from this. The Forest Service did no analysis on potential implications in the river. They've done, there's nothing in the record about them taking care of weed problems, which are all over Montana when we open a new area. Now, this trail hasn't been used since the 1940s, and so it's not a reconstruction as they try to build it. It's a construction of a new trail, essentially, into the forest, which they did not inform their clients about. Excuse me, this is Judge Schroeder. You didn't want it constructed, but it is constructed now. And so, by remanding for them to consider whether or not they should construct it seems pointless, because it's done. So, the question is, why is there still a case here? Why is it not completely moved? So, Your Honors, in this case, these are categorical exclusions they use. So, both of these projects, I mean, what to do is to be undone. We can take the bridge out. It's not in this window while the case was pending. It's a trail. I mean, the Forest Service reclaims trails all the time. They can regrade it and they can drop deadfall over it. So, there's still a rummary. I mean, much in the case, this court has ordered where a power line was put in. A power line could be moved. These aren't, this is not a permanent, this isn't like a mine where a mine's been taken out or a big logging project. Okay, but you're, but okay, we found claims are not mooted by project completion where the violation complained of may have caused continuing harm and the court can still act to remedy the harm by limiting its future adverse effects. But, I'm not, what harms do the plaintiffs contend still exist? So, with regards to which project, Your Honor, I mean, they are collective project. This is a collective cumulative. So, I would say the biggest, one of the biggest issues in this case is this is grizzly bear country. Now, I think you're, I'm gonna say that I think your NEPA claim is, it's looking to be, to me, to be on thin ice. The Endangered Species Act causes me more concern because the way they were kicked out of court on that was they sort of claimed there was a notice issue and procedural. So, the court hasn't really analyzed. If we found that what they did was sufficient, the court really didn't analyze the endangered species. That's correct. That's correct, Your Honor. And so, on the second 60 notice letter, once again, these are categorically excluded projects. These aren't big projects. Our clients were very clear in their letter that the Forest Service had never really analyzed what happens when we open new trails from the high country down into lower country where there's, you know, the recognized problems with grizzly bears are human establishment and livestock and, you know, we contend, and there's now actually studies to back up it, grizzly bears like to walk on human trails and roads. So, Taylor, I'm having a great deal of difficulty understanding what your claim is as to what damage is being done to the grizzly bears. Isn't that your claim that the present trail can be reconfigured or re-should be done or done in a different way? What is happening to the grizzly bears that bothers you? So, Your Honor, what happens is when we, this trail, since it's not a reconstruction, it's a new trail, the forest, you can't walk through it there. You have to crawl over trees and you have to, you can't walk through it. A person can't walk through it. So, a grizzly bear is not going to walk through it. It's basically a buffer between what on the other side of the mountain is ranch country with calves and lambing and the Forest Service reopens that. Now the grizzly bear can walk out and we're putting the grizzly bear in the way of harm, which is, it's a county road, so it's a faster moving traffic than the road. The Forest Service contends is slow. The grizzly bears can now use the trail to get at the cattle. How does that harm the grizzly bears? One of the number one things, threats to the grizzly bear is when they become a predator on livestock and as you know, as we know, they're opportunistic feeders. So, you know, with the white bark went away, they found a new food source. So, what they will do and it's recognized in the record as well, that these are the biggest conflicts for grizzly bears, which is human establishments, eating livestock food, eating pet food and then conflict with livestock and then getting hit by cars. All of those things are on the other side of the mountain. So, what analysis was done on the grizzly bears? So, initially the Forest Service did analysis in 2014 using old criteria. We requested that they didn't, the grizzly bear was delisted and then relisted and they never redid their analysis and we requested consultation, they realized their error and they redid their consultation. When we did our 60-day notice of intent letter. So, you got knocked out by the intent letter. The court said that basically you blew that and so you were knocked out procedurally on that. Correct. So, the district court has not looked at the Yes, so the district court ruled that we were to have to give another a second because they reconsulted that we were supposed to do another 60-day NOI letter. Now, another letter was sent to the Forest Service saying we still found fundamental flaws. Once again, our letter is very clear that the issues we're looking at with citations are livestock predations and consultation again. So, they reconsulted, we agree with that, but it was a very finite letter, the issues we were looking at which the concern is that these grizzly bears because now the Forest Service says that we're putting the people on this trail earlier in the year because the road is safer that that's the time of year when grizzlies are most at danger and it's also when they're most likely to move into lower ground. Those were really the only two issues in our NOI letter, but the district court found that all we'd asked for is reconsultation and it was essentially reconsultation with a real depiction of what the situation looks like on the ground. So, essentially the district court found that it lacked jurisdiction to consider the ESA claims due to your deficient notice. That's correct, Your Honor. So, if the district court's wrong on that, then your point would be that it would have to be remanded to the district court, not that you win, but it would have to be remanded to the district court to consider the merits of your ESA claim in the first instance. We can't do that here. That's correct. What were you asking them to do other than consultation? Oh, well, we don't think they've actually adequately consulted. For one, the other part of this project is they segmented the project to do this so they didn't actually consider all the harms that were going to happen in this project as they should. They want to use categorical exclusions. The first one for funding because they knew our clients were likely to oppose it and they wouldn't get funding if we did. So, we would like that the project is done. Well, there's still mitigating that can be done. So, the Forest Service... Like getting rid of the whole project? Not necessarily, Your Honor. I mean, there are mitigating things. So, the Forest Service does make a big deal that they consulted with our clients after they closed scoping, but they didn't actually address those. So, you'll see in the complaint that our client walked before us with... Paul, you're not... I guess, are you saying, and you're not... You haven't really said it yet. Are you saying that there are mitigating factors that could be done on an endangerance in ESA violation that wouldn't involve removing the bridge? Most definitely, Your Honor. So... Okay. I mean, let's just assume hypothetically that the judgment you lose the NEPA claim. On the ESA claim, if we were to find that the court should have exercised jurisdiction on it, so we remanded it back to exercise... What could they do? So... If we're saying the bridge stays, okay, you'll lose on the bridge. Correct, Your Honor. So, I mean... I'm not saying that's what the panel is going to say, but I'm trying to figure out what... I understand. So, there's a group now, that used to be in front of the National Research Defense Council. They now do something they call turbo flattery, which are these flags that they turn on, they flip in the wind, that basically will act the same way the trail used to. They turn the grizzly bears back out into the wilderness area, and they would keep them from going down into the lower countries. So, there are issues, there are remedies there and relief available to keep that from happening in those times of the year that are a concern. And I also think as far as the springtime goes, the Forest Service can always administratively close the trail those times a year when the grizzly bears are most sensitive. So, there are some mitigation that can be done now that the trail is constructed to remedy some of these things. I would say that there are additional environmental considerations on the bridge project that were never evaluated because the public was never given notice, our clients weren't getting notice. The only notice that was given was to project proponents to get funding. So, the Forest Service has what they call a schedule of proposed actions. That's where they list all the projects that are supposed to happen. If you live around the forest, a lot of people keep track of that because then they know the things that are coming for NEPA analysis and they can comment on them. Neither of these projects were ever put on that. Isn't the bridge better for your client? Doesn't it allow your client an access that your client didn't have before? No, Your Honor, the bridge is above where our client's property is. So, I mean, our property is right there, they come to the campground, their private property is right down below the campground, but the bridge itself is not necessarily a boon for our client. I mean, doesn't really impact him one way or the other. The impact to his operation is now his cattle, where they couldn't before, can walk out of his private land up into the campground, which is another environmental impact potentially on the campground that's never been considered by the Forest Service in their analysis. That relates to the trail? Well, that's a combined project. I mean, ultimately, this project is constructing five miles of an old road. And I do think it's important to point out in this case that the Forest Service has said there's no evidence in the record for these things. Now, our client's first communication, first knowledge of these projects was when they received notice on the second half of the trail. And it's very clear in the record that they regard that communication as, well, the bridge timbers are laying there, clearly this project has already been permitted. You've already decided what you're going to do. And the Forest Service replies, oh, no, that was a decision memo from 2015. Now, this is on the second project, and that project hasn't even been started yet, three years later. So our client, their comments are on the project at large, not just the second half of the project, the connector trail. So let me see if I can get the overall pitch you're making. As to the ESA claim, you claim that your letter of June 10, 2020 adequately informed the Forest Wildlife Service of what your objections were. And therefore, district court had jurisdiction to consider your complaint. What I see here is the only thing that has any facts to it, other than your conclusions, is that there's clear evidence this season that human grizzly conflicts on established non-motorized trails are of concern and on the rise. What you're concerned with is grizzlies coming down into the meadow where the cattle are, correct? That's correct. And there's houses, and so the thrust of your complaint is keep the grizzlies away from the cattle. Yeah, the thrust of the point is you have to consider that going forward as we're trying to recover a grizzly population to make interconnectivity between the greater Yellowstone population and the Glacier population. And some mitigation measures can be wind turbines to confuse the grizzlies and keep them up in the mountain and not down the meadow. Right, yeah, turbo flattery, it's called. Do you want to reserve the balance of your time for rebuttal? Yes, Your Honor, that'd be great. Good morning. I think it's still good morning. It is. Good morning. May it please the court. My name is Robert Stockman, here on behalf of the Forest Service. We ask this court to affirm the district court's ruling that the plaintiffs lack standing to challenge the bridge project and to dismiss the appeal with respect to the trail project because it is now moot. I take from earlier, the court will want to discuss the ESA issues. Yeah, that gives me pause. Because the district court basically said it lacked jurisdiction to consider the ESA claim due to deficient notice. If we didn't agree with that, would we have to remand it to the district court to consider the merits of the ESA claim in the first instance? I don't see how we could do that. I think the first question would be, do they have standing and is the case moot? Well, in environmental cases, standing is pretty easy to jump over. I think it's, I think it's, I would respectfully disagree. I mean, it's about the most liberal standing that you see anywhere. But I, so and only then would you get to the ESA question. So the problem with standing is that they chose to submit no evidence whatsoever establishing how this harms them at all. They didn't submit a single thing. They have cattle in the meadow which is eaten by grizzlies. There's nothing in the record about the cattle. They put you on notice that it's the claim is defective and then I think they send another letter after that, right? So they did express concern about the grizzly bears, but they don't, I think that notice might have mentioned the cattle, but there's no evidence about where precisely the cattle are. And I think it's important to remember. We all are environmental lawyers. Cattle and grizzlies are, you know, that. The bridge project doesn't bring the grizzlies to the cattle for a variety of reasons. I mean, one is grizzlies are not blocked by forest, right? Grizzlies walk through forests. They evolved to walk through forests. So they may use trails, but it's not as though the forest would block them. Second, this is a historic trail and we cited numerous images throughout the record showing that the trail was incredibly good shape, very good tread, still there. And we didn't have to remove a single large tree for either project to re-establish the trail. Okay, so what would they have had to do to, in your view, to have standing to talk about the grizzlies and the cattle and ask for, because do you agree with me that the ESA is a different inquiry than the NEPA? They can be different inquiries, yes. I mean, we could say that the NEPA's moot. I'm not saying what we're going to do because we haven't conferenced that, but we could say it's moot, or we could also say even if it's not moot, there's no evidence and that the district court was correct in affirming that you, giving you judgment on the NEPA claim. But the ESA is a different, it's raised in a different issue. The district court said it didn't have jurisdiction and based on not having jurisdiction, it did not analyze the ESA. That's true, but I. So you have that 60 day notice that, whether that was defective or were you really put on notice on that? And then there's also the letter. So can we honestly say that there's no jurisdiction? I think there's no jurisdiction. And I think this court's decision in Marina Point, which is about the Clean Water Act, but a similar notice provision, is helpful in that it says a notice has to let the target know what it actually says precisely what allegedly did wrong and when. The target is not to play a guessing game in that respect. And what's problematic here is they sent us a notice, and while it says a lot, it's 14 pages long, it, the plain upshot of the notice is do a consultation. We think your consultation was inadequate. We don't like it. We don't think it's sufficient. Do a consultation. And then we did a consultation and that we provided that in the supplemental excerpts at nine through 18. So this has been analyzed under the ESA by the agency and the Fish and Wildlife Service who concurred. And then these... So when you got that 60-day notice, you thought it was enough to put you on notice of what you had to do. So my question is, is that inconsistent with the district court saying it had no jurisdiction because it wasn't... It's deeply inconsistent because it doesn't put us on notice of what they now want to argue, right? They said do a consultation and we did a consultation. And now they're saying, oh, well, we don't like the substance of your consultation. We think your description of the trail project is inadequate. And we have no, there was nothing to put us on notice that that was their concern because they couldn't have done that because it literally hadn't... It seems like if you knew that you had to do something by virtue of that notice, that it was a sufficient notice and if that the district court could still say, okay, I have jurisdiction. Now, when I look at the merits of this, I find it has no merit. I think that is... That did not happen here. I think the court has not taken that lenient of you towards notice provisions. I mean, putting the party on notice, we think you did something wrong under the ESA is not sufficient. And I'd actually, there's a DC Circuit case... We can't analyze the ESA, the merits of the ESA claim here, can we? Oh, no, no. It would have to be remanded. But my point is that the notice is insufficient. And there you look to the whole course of the parties and here it's very telling. But it wasn't insufficient for you to think you had to do something. But it was insufficient to let us know what they want to have their claims to be now. I mean, so this court has said, this court has only allowed notices to count for one set of violations and then other violations when they're of the same type, they're very related, the information is in the defendant's hands. That isn't like this case because here it's a totally different thing. One was you haven't consulted. And now it's, oh, the details of your consultation are unsatisfactory. And we didn't know we might have fixed it. I mean, we actually don't think they are. We think it's a totally accurate description. I'm having difficulty following you. Do I have this wrong? I just read the portion of the June 2020 letter. And it talks about the problem is human contact between humans and grizzlies. When there's human contact between humans and grizzlies, several things can happen. The grizzly can eat the human or the human can shoot the grizzly, right? Those are the two things that immediately spring to mind. Why isn't that a sufficiently precise notification of what they're complaining about? To be clear, the consultation discusses that at length. And if they wanted to pursue that claim, they would just lose because it is, I mean, the problem here is they want to pursue a different claim. That's why they would lose on the merits of a summary judgment. But also they should lose for not providing adequate notice. And I do think it's important. There isn't really any evidence in this record that establishes the grizzly bears and the cattle will interact. And keep in mind. It's unusual grizzly bears that won't eat people or cattle. What I mean is, for example, they keep talking about how the cattle will go to the campground. There's no evidence the cattle have ever been to the campground. There's no evidence about the cattle being on the forest. But also the cattle aren't legally allowed on the forest, right? They don't have authorization to run their cattle across the forest without a permit. And it may well be true they keep doing that. But they can't be saying, well, we have standing. To challenge your failure to analyze an injury we incur because we violate the law. Right? I don't think that can be right. Right? That's self-inflicted. That's saying, I don't want to follow the rules about where I keep my animals. They get onto your property, and then you haven't solved the problem of the fact that they might get attacked by grizzlies. And that can't be a basis for standing. But I also want to emphasize it's still moot. Because the first time I've heard any potential mitigation, I have no idea as to who says it, because I've never heard it before today, was today. And we moved to dismiss as moot. And they could have provided any evidence saying, or even just an explanation, this is the mitigation we would like. They have never done so. And it is too late at oral argument to, for the first time, postulate that there is mitigation you have never requested in district court, never requested in your briefing, never requested in response to the motion about mootness. I just think there has to be a stopping point for introducing new theories. Are you making a new motion here for mootness on the ASA claim? Or is that encompassed? That was encompassed. Our motion for mootness was that all claims were moot. All claims. Let me ask this. Is it your position with respect to the notice that they didn't give you notice of anything that you hadn't already done? Is that in essence what you're saying? It's really the same old, same old? More precisely, it's that they now want to critique what we did after their first notice. And the problem with that is they can't possibly have told us what they thought was wrong with our analysis, because the notice predates it. There's a D.C. circuit case I would like to address. We cited in our brief. Friends of the Animals. It's by then-Judge Kavanaugh. And he talks about how, and it's a little different, but he's talking about how until the violation exists, generally it's very hard to give notice of the violation, right? And in fact, in that case, it's just a blanket rule. I wouldn't necessarily go that far. But I think on the facts of this case, it's telling, right? We wrote back to them and we said, we've heard you. Here's our consultation. And they wrote back and we said, we don't think that's good, but they didn't tell us anything about what they thought was good, bad about it. They gave no details. The district court faulted them for this. And then they said, don't move forward until you complete the consultation. And we listened to them and we did. And I do think this is sort of a dynamic in this case, where they keep saying, well, you didn't do what we said. And actually we've done what they said over and over. And it's a bit far field, but you know, they say we did nothing about the weeds. If you look at the excerpt record at 256, we added the trail to weight weed surveillance because they complained. They said, we didn't look at the waters. Well, we did. That's an excerpt record at page 450. And there's this kind of, we don't know if there's a present controversy because they've never even told us this is what we want you to do. So we can't even say whether we do it or not, much less whether it's a remedy that's available, whether it would be effective. And with no evidence of the harm to them, we can't say whether it's effective remedy to that harm, but sorry. Can I follow up on that for a minute? Because the object of this lawsuit, as I understand it, was to stop this project. And it didn't stop this project. And in fact, they asked for an injunction to stop the project when it was three quarters completed and the our court did. So now the project is completed. Now, if we still have a problem under the Endangered Species Act, which we may well, because we have cattle and we have, as Judge Baez pointed out, we have cattle and we have grizzly bears. So is there, and you are saying that they haven't specified the remedy. This sounds like a different lawsuit. I mean, that they bring a different lawsuit given the completion of this project, not a lawsuit to stop this project, but a lawsuit to under the Endangered Species Act to prevent the taking of the grizzlies. But you wouldn't allow that because you would say they didn't do it within the 60 days, would you? Well, they'd have to provide a new notice. I mean, if they wanted to say there was something wrong, they need to provide us a notice that says what was wrong. And that gives us an opportunity to maybe settle, to maybe solve it on our own. It also gives Fish and Wildlife Service an opportunity to say, you know, I think I would like to know more. Deer Forest Service, tell us why do you, why do you think this is adequate? Why don't you think that's adequate? And that's just, none of that happened because they didn't provide the notice. But you're telling me that you wouldn't come back and say you didn't do it within that previous 60 day window, so you're out. I mean, I don't want to hypothesize. All right, but I'm, I'm asking you, that's, it's like, are you saying there's a remedy, but that you would immediately come back on the remedy and say you didn't procedurally comply, alley, alley, oxen free? I would say they haven't provided notice for the claims they want to provide. In the time period, it's a procedural, there's a 60 day procedural, so they can't do it now. Not today. Whether they could do it two months from now, I, I don't know. I, and I, it would depend on what the complaint is, right? I mean, it would depend, this has been a moving target. But it would need, it would need to be new evidence. It would need to be a new notice, yes. It wouldn't, couldn't be back, based on back there. No, we, we think there's not jurisdiction to go back for a variety of reasons. And one other is that the whole goal of this lawsuit was to stop the trail, and it is over. And the Forest Service held off on building the trail for well over a year to let this be fully litigated in district court. We wanted to build the trail for safety reasons, but we're like, you know what, we'll give you your day in court. But it can't be that we. Now, do they get any advantage from the bridge and the trail? The Donahos? I, I think. I thought you argued that somewhere. I, I don't think we would say they got an advantage. We just don't think it did any impact. And I do want to note something that opposing counsel said today. They said the bridge doesn't impact them one way or another. I think that shows they have no standing with respect to the bridge, right? I mean, and that's our position is there's no evidence that the bridge project impacts them one way or another. I mean, that's the whole reason we argued standing there. The trail is close to their property, so we, we decided not to argue it there. They could use the trail project. They're not foreclosed to, but actually, based on what they said during that comment period, we moved it as far from their property as practical. We put up conifers to create a, or we left conifers, so there should be a screen. So our goal was to make it as non-intrusive as possible for their property. Good enough for government work. I mean, we're all property owners in a shared location. You've got to coordinate, but also people, people have a right to use the national forest, right? I mean, we want to provide public access to people, and I think that's a valuable thing. And there isn't really any evidence that trails are harmful to grizzly bears. I mean, we did do a consultation, but there's a reason it isn't like a motorized road. I mean, that's part of what's a little strange on the ESA claim. Okay. I guess before I sit down, were there any questions about the merits of the NEPA claims? Not for me. There does not appear to be. Okay. I appreciate it. Thank you all. And we ask this court to affirm on the bridge project to dismiss the appeal with the trail project, but if the court chooses not to, to affirm on the trail project as well. Thank you. I would begin by, I guess, clearing a misconception. I mean, a NEPA claim has never stopped a project. This case is as much about asking the Forest Service to follow the procedures set before them. This is not necessarily about stopping the project, but my clients live in the middle of the forest and when the Forest Service doesn't follow the procedures set out for them, there's no predictability in what they're going to do. I also don't think there's ever been any question between the Forest Service and my clients that they run cattle in there. I mean, District Ranger Coffin's declarations filed in this case admit to them running cattle. Their property sits right below there. They've owned it for over a hundred years. They run cattle there. I mean, that's what we do in Montana next to a forest is we run cattle and that's what the grass is for. With regards to the ESA issues in this case, is the letter wasn't just about consultation. The letter was about adequate consultation, which is describing the details on the ground as they exist. Now, the Forest Service, when we say that scoping wasn't adequate on the second half of the trail, the connector trail, they gave 14 days to our clients, mailed our notice, emailed others, not on the District SOPA again. They make a big deal about District Ranger Coffin meeting with my client and if you'll see in the complaint, they walked the forest. My client said, listen, when I was younger, the cattle used to go up into the campground, but since the forest has grown in, the cattle won't go there anymore. But that's not in their decision memo. In fact, little of it was discussed between Mr. Coffin and that's the purpose of NEPA, so it's on the record and the Forest Service and agencies can actually respond to the environmental concerns that are raised. If you don't follow, you don't do an early and open process. I'd also note that the first half of this trail, they worked with the Stillwater Mine to get a right-of-way from 2007 to 2014 and when they decided to do the second half in 2017, already knowing from the National Historic Preservation Act study that the trail ran through the middle of our client's property, never contacted our client to get a right-of-way. I mean, the Forest Service has no idea if our clients would have given one or not because they never actually opened their mouth and said, hey, we're going to rebuild this trail. You're here all the time. You own this property. What do you think the environmental considerations are? Let's talk about it. Now instead, they mail them the notice. They got two days for us due and they tried to supply comments, but I mean, the point of an early open process is people have time to think through the ramifications of the project that's being done. It's not to hurry up and get the analysis out of the way. In fact, in this case, the record shows that at the time scoping was completed, they hadn't actually gone to the National Historic Preservation Act to do their analysis there and that analysis wasn't completed for another year. So there was no reason to rush scoping unless they just wanted to get around our clients. So what our clients want is a vacate and remand for the agency to conduct the analysis properly so that the public has notice and they have time to provide comments. And is there any more further questions? I think that concludes. Thank you. I don't appear to be any additional questions. All right. Thank you both for your argument today. This matter will stand submitted and this court is in recess till tomorrow morning at 9 a.m. Thank you.
judges: SCHROEDER, CALLAHAN, BEA